Mark S. Horoupian (CA Bar No. 175373)
  mark.horoupian@gmlaw.com
**GREENSPOON MARDER LLP**
1875 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 213.626.2311
Facsimile: 954.771.9264

Attorneys for Howard M. Ehrenberg,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:24-bk-13284-WB |
| CHARITY PRIME REALTY, INC. | Chapter 7 |
| Debtor. | |
| | Adv. No. |
| HOWARD M. EHRENBERG, CHAPTER 7 TRUSTEE | **COMPLAINT FOR;** |
| Plaintiff, | **1) BREACH OF FIDUCIARY DUTY;**<br>**2) CORPORATE WASTE;**<br>**3) USURPATION OF CORPORATE OPPORTUNITY;**<br>**5) CONVERSION;**<br>**6) AVOIDANCE AND RECOVERY OF FRAUDULENT CONVEYANCES;**<br>**7) AVOIDANCE AND RECOVERY OF UNAUTHORIZED POST-PETITION TRANSFERS** |
| vs. | |
| JENERO JEFFERSON, an Individual; PORSCHE L. JEFFERSON, an Individual; GREGORY JEFFERSON, an Individual, MINDFUL GROWTH FOUNDATION, California not for profit corporation; MINDFUL GROWTH CARE HOMES, LLC, a California limited liability company; FOREVER SARAH'S ELDERLY CARE CORP, a California Corporation; and DOES 1-10, | |
| Defendants. | **Status Conference**<br>Date:    To Be Set<br>Time:    To Be Set<br>Place:   Courtroom 1375<br>              255 East Temple Street<br>              Los Angeles, CA 90012 |

MSH 65678347v1

For his Complaint (the "Complaint"), against the Jenero Jefferson, Mindful Growth Foundation, Mindful Growth Care Homes, LLC, and Forever Sarah's Elderly Care Corp, a California corporation, Howard M. Ehrenberg, the duly appointed and acting Chapter 7 Trustee (the "Trustee" or "Plaintiff"), hereby alleges and avers as follows:

**I.**

## NATURE OF THE ACTION

1. By and through the Complaint, the Trustee seeks damages from Defendants for breach of fiduciary duty, corporate waste, usurpation of corporate opportunity, and also seeks the avoidance and recovery of preferential and/or fraudulent transfers, and the avoidance and recovery of unauthorized post-petition transfers.

**II.**

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §§157(b)(1), 157(b)(2)(A), 157(b)(2)(E), 157(b)(2)(O) and 1334.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1409 because this adversary proceeding arises in, and is related to, the Bankruptcy Case pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

4. This action is a core proceeding pursuant to 11 U.S.C. §§ 544, 547, 548, 550.

5. The Trustee, as the trustee of the Debtor's bankruptcy estate, has authority to pursue all claims and causes of action held by the Debtors' estates.

6. The Trustee has standing to bring this adversary proceeding on behalf of the Debtor's estate.

**III.**

## REQUIRED PLEADING DISCLOSURE

7. Pursuant to Local Bankruptcy Rule 7008-1, the Trustee consents to the entry of a final order or judgment on this Complaint by this Court.

## IV.

## PARTIES TO THE ACTION

8.      Plaintiff is the duly appointed and acting Trustee of the Debtor's bankruptcy estate and acts in this action not individually buy solely in his capacity as the chapter 7 trustee

9.      The Trustee is informed and believes and based thereon alleges that defendant Jenero Jefferson ("Jefferson"), is an individual, residing in Los Angeles County, and at all relevant times herein was an officer and director, and sole shareholder of the Debtor.

10.      The Trustee is informed and believes and based thereon alleges that defendant Porsche L. Jefferson, is an individual, residing in Los Angeles County.

11.      The Trustee is informed and believes and based thereon alleges that defendant Gregory Jefferson, is an individual, residing in Los Angeles County

12.      The Trustee is informed and believes and based thereon alleges that defendant Mindful Growth Foundation ("MGF"), is a California not for profit corporation. At all relevant times herein, Jefferson was an officer and director of MGF.

13.      The Trustee is informed and believes and based thereon alleges that defendant Mindful Growth Care Homes, LLC ("MGCH"), is a California limited liability company.  At all relevant times herein, Jefferson was an officer and director of MGCH.

14.      The Trustee is informed and believes and based thereon alleges that defendant Forever Sarah's Elderly Care Corp ("Forever Sarah's") is a California corporation.  At all relevant times herein, Jefferson was an officer and director of Forever Sarah's.

## V.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

15.      On April 29, 2024 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

16.    On May 23, 2025, the Court entered an order converting the Debtor's case to Chapter 7 after issuing an order to show cause requiring the Debtor to show cause why the case should not be converted or dismissed.

17.    On June 4, 2025, Howard M. Ehrenberg was appointed as the Chapter 7 trustee in the case.

18.    On the Petition Date, the Debtor owned eight (8) residential properties (the "Real Properties").  Those properties included 4313 Hoen Avenue, Santa Rosa, CA ("Hoen"), 130 Anna Drive, Windsor, CA  ("Anna"), 4028 Kenway, Los Angeles ("Kenway"), 1642 6th Avenue, Los Angeles ("6th Avenue"), 1811 W. 41st Street, Los Angeles ('41st Street'), 5035 S. Verdun Avenue, Los Angeles ("Verdun"), 5317 Valley Ridge, Los Angeles ("Valley Ridge"), and 5739 Chesley, Los Angeles ("Chesley").

19.    At the Debtor's initial Rule 341(a) examination conducted on May 28, 2024, Jefferson testified that each of the Real Properties were leased to tenants, and that they were all currently paying rent, and had made all rent payments as of May 15, 2025. Jefferson testified that the Debtor received the following amounts for each of the Real Properties:  Hoen:  Approximately $5,000; Anna: approximately $5,000; Kenway, approximately $15,000; 6th Avenue: approximately $13,000; 41st Street, approximately $6,000; Verdun, approximately $9,000; Valley Ridge:  approximately $10,000; and Chesley, approximately $8,000 to $9,000.  Based on his testimony, the total rents approximated $71,000 to $72,000.  Jefferson testified that because he had trouble opening up Debtor in Possession accounts, he had not been able to deposit the rent checks he collected.

20.    In the Debtor's first monthly operating report ("MOR"), the Debtor reported that for the month ending May 31, 2024, the Debtor had receipts of $35,945 and expenses in the same amount.   The bank statement attached to the MOR, which was for the Debtor's prepetition account, however, showed deposits of $38,904.15.  The account statement also showed that most debits to the accounts were "withdrawals" not payment of operating expenses or payments to the lenders on the Real Properties.

21.    In the Debtor's second MOR, the Debtor reported that for the month ending June 30, 2024, the Debtor received only $200 in income and made no disbursements.

22.    In the Debtor's third MOR, the Debtor reported that for the month ending July 1, 2024, the Debtor received no income and made no disbursements.

23.    In the Debtor's fourth MOR, the Debtor reported that for the month ending August 31, 2024, the Debtor received only $100 in income and made no disbursements.

24.    In the Debtor's amended third MOR, the Debtor reported that for the month ending July 31, 2024, the Debtor received $44,041 in income and made disbursements totaling the same exact amount.   The Debtor attached to the third amended MOR a document entitled "Cash Transactions", wherein the Debtor listed rents received by each Real Property (with 41st Street and Chesley receiving no rent).   The Debtor then listed "rental expenses" in the same amount as the rental income for each of the Real Properties.  The Debtor also included the Declaration of Jenero Jefferson Re Chapter 11 Monthly Operating Report, wherein Mr. Jefferson stated that for the MORs for reporting periods ending July 31, 2024, August 31, 2024, and September 30, 2024, "The Debtor receives rental income for each of the eight real properties and one DIP account was assigned to each property to segregate the income and expenses for each of them. Because the DIP bank accounts are new, the initial deposits had to be in the form of cash or money order to ensure the availability of funds to make the necessary payments to lenders.   The prior payments were requested in the form of cash from the tenants for the monthly lease payments.  The debtor made payments to each lender once the court authorized the use of the cash collateral."

25.    In the Debtor's amended MOR for the month ending August 31, 2024, the Debtor reported that it received $27,312.01 in rental income and had "rental expenses" in the same exact amount.   The Debtor attached the same declaration of Mr.

Jefferson, attesting that all of the income was paid in cash, and that payments were made to lenders, apparently in cash as well.

26.      In the Debtor's MOR for the month ending September 30, 2024, the Debtor reported that it received $14,234 in income and made disbursements of $14,304. The Debtor attached the same declaration of Mr. Jefferson, attesting that all of the income was paid in cash, and that payments were made to lenders, apparently in cash as well.   The declaration went on further to state that "On and after October 2024, the tenants started to pay their rent to the Debtor with checks instead cash [sic] since the pressure was off a bit now."

27.      In the Debtor's MOR for the month ending October 31, 2024, the Debtor reported that it received $40,000 in income and made disbursements of $38,532. In the Declaration of Mr. Jefferson attached to the October MOR, the Mr. Jefferson attested that the Debtor received only rent from the 41st Street Property in the amount of $40,000 and stated that "the debtor made payment of $38,462.35 to PennyMac, the lien holder on the 41st St. property.  With this payment, the Debtor has caught up on the payments to the lender."  The bank statements attached to the MOR, however, do not reflect any payment to PennyMac, rather it shows a branch withdrawal in that amount. Mr. Jefferson's declaration further states that "the Debtor has signed an agreement with its tenant for the 'Anna' property to defer the payment of rent arrears and has agreed with them that the balances due plus a late fee charge will be settled on or before January 17, 2025."  As discussed below, the tenant of the Anna Property was Forever Sarah's, an entity controlled entirely by Mr. Jefferson.

28.      In the Debtor's MOR for the month ending November 30, 2024, the Debtor reported that it received no income and made disbursements of $1,320.  One of those disbursements shown in the bank account was for $1,000 to Mr. Jefferson.  In the Declaration of Mr. Jefferson submitted with the November MOR, Mr. Jefferson testified that "The debtor signed agreements with its tenants to defer the payment of the rent arrears, including the rents of November 2024 and has agreed with them that the

balances due plus a late fee charge will be settled on or before January 17, 2025. Therefore, the Debtor did not make payments to the lenders because he did not receive any rental income in the same reporting period." As discussed below, the Trustee is informed and believes that each of the Debtor's tenants are entities like Forever Sarah's that were controlled directly by Mr. Jefferson.

29.    In the Debtor's MOR for the month ending December 31, 2024, the Debtor reported that it received no income and made disbursements of $30. In the Declaration of Mr. Jefferson submitted with the November MOR, Mr. Jefferson testified that "The debtor signed agreements with its tenants to defer the payment of the rent arrears, including the rents of December 2024 and has agreed with them that the balances due plus a late fee charge will be settled on or before January 17, 2025. Therefore, the Debtor did not make payments to the lenders because he did not receive any rental income in the same reporting period." As discussed below, the Trustee is informed and believes that each of the Debtor's tenants are entities like Forever Sarah's that were controlled directly by Mr. Jefferson.

30.    In the Debtor's MOR for the month ending January 31, 2025, the Debtor reported that it received $36,000 in income and made disbursements of $36,077. In the Declaration of Mr. Jefferson submitted with the November MOR, Mr. Jefferson testified that "5. In January 2025, the Debtor received $36,000 from the tenants of the 1811 W 41 st Drive property for back rents, which were deposited in the DIP Bank account that ends in ... 8731. Of the rents received, $25,000.00 was used to make payment to the lender Penny Mac Mortgage. 6. The debtor did not make payments to the lenders because no rental income was received in the same reporting period, other that the mentioned above at paragraph number 5." The bank statements attached to the January MOR, showed that Mr. Jefferson deposited $10,000 on January 15, 2025, and then withdrew $10,000 on January 17, 2025. The bank statements also reflect that Mr. Jeferson deposited $15,000 on January 21, 2025, and $10,000 on January 28, 2025. The bank statements further reflect that on January 23, 2025, a payment of $972.41 was

made to Paychex, and that a withdrawal of $25,000 was made at a branch.  No payment to Penny Mac Mortgage was reflected in the bank statements.

31.      In the Debtor's MOR for the month ending February 28, 2025, the Debtor reported that it received no income and made disbursements of $30.  In the Declaration of Mr. Jefferson submitted with the February MOR, Mr. Jefferson testified that the Debtor received no income from its tenants and therefore made no payments to its lenders.

32.      In the Debtor's MOR for the month ending March 30, 2025, the Debtor reported that it received $14,000 in income and made disbursements of $11,070. The bank statements attached to the March MOR reveal a $10,000 disbursement was made to Mindful Growth Foundation, an entity controlled by Mr. Jefferson.  There was no authorization for the Debtor to pay Mindful Growth Foundation anything.   The bank statements reveal that $1,000 was withdrawn at a branch.  No payments to lenders are reflected in the bank statements.

33.      In the Debtor's MOR for the month ending April 30, 2025, the Debtor reported that it received $8,064 in income and made disbursements of $5,170.  The bank statements attached to the April MOR reveal that a withdrawal of $5,099.62 was made at a branch.  No payments to lenders are reflected in the bank statements.

34.      During eleven-month period covered by the MORs, May 1, 2024, through April 30, 2025, the Debtor reported income of only $214,691.15, $85,587 of which was allegedly received in cash.  According to Mr. Jefferson's testimony at the initial Rule 341(a) examination, however, the Debtor should have been receiving between $71,000 and $72,000 per month, totaling between $781,000 and $792,000 over the period covered by the MORs.  Furthermore, during the period covered by the MORs there is no record of any disbursements being made to the lenders on the Real Properties, other than Mr. Jefferson's declarations that they were paid in cash during the first few months of the case, and that approximately $63,000 was paid to Penny Mac. The MORs also reveal that the only material disbursements made during the period were

in the form of withdrawals at bank branches, presumably by Mr. Jefferson, $10,000 to one of the Debtor's tenants controlled by Mr. Jefferson, and $1,000 paid by Zelle directly to Mr. Jefferson.

35.    According to the Debtor's filed Schedule G [Dkt No 1], the Real Properties were occupied by the following tenants:

| Property Address | Tenant |
| --- | --- |
| 4313 Hoen | Forever Sarah's Elderly Care |
| 130 Anna | Forever Sarah's Elderly Care |
| Kenway | Mindful Growth Care Homes |
| 6th Avenue | Mindful Growth Care Homes |

36.    After the Trustee was appointed, Mr. Jefferson advised the Trustee in writing that the Real Properties were occupied by the following tenants:

| Property Address | Tenant |
| --- | --- |
| 4313 Hoen | Forever Sarah's Elderly Care |
| 130 Anna | Forever Sarah's Elderly Care |
| Kenway | Mindful Growth Care Homes |
| 6th Avenue | Mindful Growth Care Homes |
| 5035 Verdun | Dangerfield Institute |
| 41st Street | Dangerfield Institute |

37.    On information and belief, the representation that Dangerfield Institute was a tenant at Verdun and 41st Street was false.

38.    At the Rule 341(a) hearing conducted after the conversion of the case (the "Second 341(a)"), Mr. Jefferson testified that the Real Properties were occupied by the following tenants:

MSH 65678347v1                                        9

| Property Address | Tenant |
|---|---|
| 4313 Hoen | Forever Sarah's Elderly Care |
| 130 Anna | Forever Sarah's Elderly Care |
| Kenway | Mindful Growth Care Homes |
| 6th Avenue | Mindful Growth Care Homes |
| 41st Street | Mindful Growth Care Homes |
| 5035 Verdun | Mindful Growth Care Homes |

39. Despite repeated requests, the Debtor failed to produce copies of the leases for the Real Properties, despite testifying that there were written leases for all of them. The Debtor provided a copy of only one lease for the Real Properties, the property at 6th Avenue.

40. Mr. Jefferson testified at the Second 341(a), that he was no longer affiliated with the tenants of the Real Properties. He particularly testified that he was affiliated with Mindful Growth Care Homes up until "around the time of the bankruptcy filing", and that he ended his affiliation with Forever Sarah's at the beginning of 2025. On information and belief, those statements were false.

41. Mr. Jefferson testified that to his knowledge all of the tenants were current up until conversion of the case to Chapter 7. As demonstrated by the reported income in the MORs, this statement was false.

42. Mr. Jefferson failed to appear at the continued Rule 341(a) hearing scheduled for August 6, 2025.

43. The Trustee is informed and believes, and based thereon alleges, that Mr. Jefferson controlled each of the tenants of the Real Properties, in which different types of care facilities, including foster care, residential care facilities for the elderly, and other care facilities were operated. Those entities, including Forever Sarah's and Mindful Growth Care Homes received income from various state and federal agencies, including without limitation the California Department of Social Services, and the California

Department of Public Health.  While he owed a fiduciary duty and duty of loyalty to the Debtor, Mr. Jefferson breach those duties by allowing the tenants, he controlled, to not pay rent for many months after the filing of the bankruptcy, never enforced the terms of the lease, yet continued to allow those tenants to operate and collect revenue from government agencies.  Mr. Jefferson appears to have made the decision to allow these tenants to stay virtually rent free when it became apparent that the Debtor would lose some or all of the properties to foreclosure.

44.    As stated above, during the eleven month period while the Debtor was in Chapter 11, the Debtor had total receipts of approximately $214,000.   When compared against the income in previous years, it is apparent that Mr. Jefferson purposefully stopped requiring the tenants to pay rent, allowing him to redirect those funds for other purposes.   According to the Debtor's statement of financial affairs, the Debtor had income in the calendar year 2023 in the amount of $1,514,335, and $900,000 for the calendar year 2022. In 2021, the Debtor's federal tax return showed gross receipts of $706,493.  The Debtor's bank statements for the period covered by April 2022 through August 2023, show total receipts of $1,753,348.96.

45.    In the years before the bankruptcy petition was filed, Mr. Jefferson's reign over the Debtor was also plagued with gross mismanagement and self dealing.

46.    The Debtor's bank statements during the two years preceding the bankruptcy filing reveal that despite the Debtor not having any employees, at least $250,000 was paid to individuals other than Mr. Jefferson, including presumed relatives of Mr. Jefferson, including Gregory Jefferson and Porsche Jefferson, with Porsche alone receiving approximately $40,000.  In addition, despite not having any employees, approximately $26,000 was paid during that time period to Paychex, a payroll processing company.  Mr. Jefferson himself, took at least $45,000 in withdrawals by or payments to Mr. Jefferson, and likely much more.  The records also reveal systematic ATM cash withdrawals (exclusive of cash withdrawals at branches).  The records also reveal debit card purchases at high end luxury restaurants, including Maestro's, and high end luxury

retailers including Louis Vuitton.  Further, the records reveal that in October, 2022, the Debtor paid $10,000 to Crevier BMW, despite not owning a car, and two weeks prior to the bankruptcy filing paid $5,000 to an entity called "Cars & Casas".  The records also reveal approximately $50,000 in credit card payments including $13,000 to AppleCard, $11,867 to Discover, $1,073 to Capital One, $5,000 to Chase Credit Card, $20,000 to American Express.

47.    During the two year period prior to the bankruptcy filing, the Debtor made the following transfers, totaling $40,200 to Porsche Jefferson:

| Date | Amount ($) |
| --- | --- |
| April 5, 2022 | 300.00 |
| May 5, 2022 | 1,500.00 |
| June 21, 2022 | 1,000.00 |
| July 1, 2022 | 1,500.00 |
| July 12, 2022 | 1,000.00 |
| August 11, 2022 | 1,000.00 |
| August 11, 2022 | 1,500.00 |
| September 19, 2022 | 1,000.00 |
| September 29, 2022 | 500.00 |
| October 25, 2022 | 200.00 |
| November 15, 2022 | 2,000.00 |
| November 16, 2022 | 1,500.00 |
| November 17, 2022 | 5,000.00 |
| November 25, 2022 | 2,000.00 |
| November 28, 2022 | 900.00 |
| December 6, 2022 | 800.00 |
| February 7, 2023 | 1,000.00 |
| May 15, 2023 | 3,000.00 |
| May 26, 2023 | 900.00 |
| August 11, 2023 | 600.00 |
| August 22, 2023 | 1,400.00 |
| August 29, 2023 | 500.00 |

MSH 65678347v1

| Date | Amount ($) |
|---|---|
| September 11, 2023 | 800.00 |
| September 12, 2023 | 500.00 |
| September 12, 2023 | 700.00 |
| September 12, 2023 | 900.00 |
| September 28, 2023 | 1,000.00 |
| October 16, 2023 | 1,500.00 |
| October 16, 2023 | 2,000.00 |
| November 15, 2023 | 1,500.00 |
| November 29, 2023 | 700.00 |
| February 5, 2024 | 1,500 |

48.    During the two year period prior to the bankruptcy filing, the Debtor made the following transfers, totaling $50,344.70 to Gregory Jefferson:

| Date | Amount ($) |
|---|---|
| July 5, 2022 | 1,000.00 |
| July 11, 2022 | 600.00 |
| July 14, 2022 | 850.00 |
| July 20, 2022 | 1,200.00 |
| November 2, 2022 | 1,000.00 |
| November 22, 2022 | 3,500.00 |
| November 28, 2022 | 2,500.00 |
| November 28, 2022 | 5,000.00 |
| January 6, 2023 | 2,500.00 |
| January 10, 2023 | 300.00 |
| March 3, 2023 | 200.00 |
| May 5, 2023 | 2,000.00 |
| June 15, 2023 | 700.00 |
| June 20, 2023 | 500.00 |
| July 20, 2023 | 1,024.70 |
| September 6, 2023 | 2,000.00 |

MSH 65678347v1                    13

| Date | Amount ($) |
| --- | --- |
| September 6, 2023 | 3,000.00 |
| September 8, 2023 | 1,520.00 |
| September 15, 2023 | 3,000.00 |
| September 18, 2023 | 250.00 |
| September 18, 2023 | 400.00 |
| October 2, 2023 | 800.00 |
| October 26, 2023 | 3,000.00 |
| November 2023 | 5,000.00 |
| February 5, 2024 | 500 |
| February 14, 2024 | 500 |
| March 21, 2024 | 200 |

49.     During the two year period prior to the bankruptcy filing, the Debtor made at least the following transfers, totaling $44,394.70 to Jenero Jefferson, exclusive of cash withdrawals, ATM withdrawals, and other transfers which are still under investigation:

| Date | Amount ($) |
| --- | --- |
| July 5, 2022 | 200.00 |
| July 5, 2022 | 250.00 |
| July 8, 2022 | 1,000.00 |
| July 11, 2022 | 600.00 |
| July 11, 2022 | 1,000.00 |
| July 14, 2022 | 300.00 |
| July 14, 2022 | 850.00 |
| November 2, 2022 | 1,000.00 |
| November 22, 2022 | 3,500.00 |
| November 28, 2022 | 2,500.00 |
| November 28, 2022 | 5,000.00 |

MSH 65678347v1                           14

| Date | Amount ($) |
|---|---|
| January 6, 2023 | 2,500.00 |
| January 10, 2023 | 300.00 |
| March 3, 2023 | 200.00 |
| May 5, 2023 | 2,000.00 |
| June 2023 (various) | 1,200.00 |
| July 20, 2023 | 1,024.70 |
| September 6, 2023 | 2,000.00 |
| September 6, 2023 | 3,000.00 |
| September 8, 2023 | 1,520.00 |
| September 15, 2023 | 3,000.00 |
| September 18, 2023 | 250.00 |
| September 18, 2023 | 400.00 |
| October 2, 2023 | 800.00 |
| October 26, 2023 | 3,000.00 |

50.     On September 13, 2023, the Debtor made a transfer of $12,000 to defendant MGCH.

51.     On March 11, 2025, the Debtor without court approval made a post-petition transfer of $10,000 to MGF.

**FIRST CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**(Against Defendant Jenero Jefferson)**

52.     The Plaintiff restates and re-alleges each of the foregoing allegations as if fully set forth herein.

53.     The Trustee is informed and believes and based thereon alleges that Jenero Jefferson, at all relevant times herein, served as the Debtor's sole officer and director.  As a director and officer of the Debtor, Jenero Jefferson owed fiduciary duties to the Debtor, including but not limited to a duty of loyalty, good faith and fair dealing, and

MSH 65678347v1                           15

an obligation to perform his duties on behalf of the Debtor as a reasonably prudent person would do in a like position as a fiduciary of a business, acting in the best interest of the Debtor.

54.    Jenero Jefferson was required to act in the best interests of the Debtor, was required to serve the Debtor in good faith, were required to avoid transactions that would conflict with the Debtor's best interests, and was required to act with due care, including reasonable inquiry.

55.    Jenero Jefferson elevated his own personal interests and those of the entities he controlled, MGF, MGCH and Forever Sarah's over the interests of the Debtor.

56.    By allowing MGF, MGCH and Forever Sarah's, entities within which Mr. Jefferson had a personal financial interest, to remain at the Real Properties without paying rent, yet continuing to draw funds from various governmental agencies, Mr. Jefferson breached his fiduciary duty rather than attempting to enforce the terms of the leases by which these entities occupied the Debtor's property.

57.    Further, under Mr. Jefferson's control, he allowed the Debtor to pay hundreds of thousands of dollars to individuals, including himself and his family members, to make luxury purchases, to pay for personal credit cards, and to pay for employees of other organizations, all without any benefit or consideration to the Debtor.

58.    By approving or allowing the Debtor to enter into these transactions, Mr. Jefferson operated or acted in a manner that created an actual or apparent conflict of interest between Debtor, MGF, MGCH, Forever Sarah's and or other insiders that had a personal, business, or financial interest benefitting from the conflicted transactions.

59.    Mr. Jefferson's breach of fiduciary duty of loyalty involved intentional misconduct, fraud, or a knowing violation of the law.

60.    The Trustee is informed and believes, and based thereon alleges, that despite Mr. Jefferson's actual or constructive knowledge of his and or other insiders' personal, business, and financial interests in transacting with the Debtor, Mr. Jefferson

approved or allowed the Debtor to enter into these transactions without any reasonable inquiry as to whether the transactions and transfers made were in the best interests of the Debtor and their creditors.

61.    The Trustee is informed and believes, and based thereon alleges, that Mr. Jefferson failed to act in the best interests of the Debtor while approving or allowing the Debtors' transactions with the MGF, MGCH, and Forever Sarah's and other insiders, including but not limited to Mr. Jefferson, Porsche Jefferson and Gregory Jefferson.

62.    The Trustee is informed and believes, and based thereon alleges, that by breaching his fiduciary duty to the Debtor, Jefferson directly and proximately caused damages to the Debtor by, including but not limited to, authorizing and approving the transactions and distributions to himself and other insiders, failed to collect rent from the tenants which were entities in which he had a personal financial interest, all of which resulted in the dissipation of corporate assets and harm to the Debtor and their creditors, both individually and collectively, in an amount to be proven at trial, but presently estimated to be at least $500,000.00.

**SECOND CAUSE OF ACTION**

**CORPORATE WASE**

**(Against Defendant Jenero Jefferson)**

63.    The Plaintiff restates and re-alleges each of the foregoing allegations as if fully set forth herein.

64.    The Trustee is informed and believes, and based thereon alleges, that Jenero Jefferson caused the corporate waste of Debtor's assets without good faith.

65.    The Trustee is informed and believes, and based thereon alleges, that Jefferson caused the Debtor to exchange its assets, including cash paid for non-business related purposes, failure to collect rents from the Debtor's tenants which were owned and controlled by Mr. Jefferson, for such disproportionate consideration that no reasonable person in Mr. Jefferson's position would be willing to approve or allow such transactions.

66.     The Trustee is informed and believes, and based thereon alleges, that Mr. Jefferson caused the Debtor to transfer its assets as discussed in the foregoing paragraphs for no corporate purpose or for no consideration.

67.     The Trustee is informed and believes, and based thereon alleges, that the Debtor  did not receive any substantial consideration in exchange for transfers and use of the Debtor's Real Properties as discussed in the previous paragraphs.

68.     The Trustee is informed and believes, and based thereon alleges, that Mr. Jefferson caused substantial damage to the Debtor's estate and its creditors through the waste of the Debtor's assets in an amount according to proof at trial.

**THIRD CAUSE OF ACTION**

**USURPATION OF BUSINESS OPPORTUNITY**

(**Against Defendant Jenero Jefferson**)

69.     The Plaintiff restates and re-alleges each of the foregoing allegations as if fully set forth herein.

70.     The Trustee is informed and believes, and based thereon alleges, that Mr. Jefferson caused the Debtor's corporate opportunity to be wrongfully usurped through transfer of the Debtor's funds to himself, other insiders, and to others for non-business related purposes, allowing the entities that he owned and controlled to remain in possession of the Real Properties without collecting rents.  In so doing, he allowed those third parties to benefit from the Debtor's assets without receiving consideration from them.  With respect to the tenants, if the tenants were true third parties (which they were not despite Mr. Jefferson's false testimony to the contrary), the Debtor should have evicted them immediately after non-payment of rent.  Mr. Jefferson, however, allowed them to stay rent free because he personally benefitted from their rent-free tenancy.

71.     The Trustee is informed and believes, and based thereon alleges, that Mr. Jefferson utilized and took advantage for his own benefit of Debtor's corporate opportunities.

72.    The Trustee is informed and believes, and based thereon alleges, that Mr. Jefferson caused substantial damage to the Debtor's estate and its creditors through the usurpation of the Debtors' business opportunities in an amount according to proof at trial.

### FOURTH CAUSE OF ACTION

### CONVERSION

### (Against Defendant Jenero Jefferson)

73.    Plaintiff incorporates each of the general and foregoing allegations as if fully set forth herein.

74.    In connection with and in addition to the avoidable transfers claims identified above, Defendant Jenero Jefferson wrongfully exercised dominion and control over Debtor's property, which constituted property of the bankruptcy estate.

75.    The Trustee is informed and believes, and based thereon alleges, that the Debtor owned certain property, including monies, of which it had the right to own and possess.

76.    The Trustee is informed and believes, and based thereon alleges, that Mr. Jefferson wrongfully caused Debtor's funds to be transferred or otherwise converted to his possession by causing the Debtor transfer the Debtor's assets, including the use of the Real Properties for no consideration, and that such transfers were not done in good faith nor in the Debtor's best interests.

77.    The Trustee is informed and believes, and based thereon alleges, that as a result of the Defendant's wrongful actions converting the Debtor's property, the Debtor suffered substantial damages at an amount according to proof at trial.

**FIFTH CAUSE OF ACTION**

**AVOIDANCE OF 2-YEAR FRAUDULENT TRANSFERS (CONSTRUCTIVE FRAUD)**

**(Against Defendants Jenero Jefferson, Porsche Jefferson, Gregory Jefferson,**

**MGCH, MGF, and Forever Sarah's; Does 1-10)**

**[11 U.S.C. §§ 548(a)(1)(B)]**

78.     Plaintiff incorporates each of the general and foregoing allegations as if fully set forth herein.

79.     The Trustee is informed and believes, and based thereon alleges, that during the two-year period immediately preceding the Petition Date, the Debtor made the transfers to or for the benefit of Defendants Jenero Jefferson, Porsche Jefferson, Gregory Jefferson, MGCH, MGF and Forever Sarah's and to be identified defendants Does 1 through 10 without the Debtor having received reasonably equivalent value in exchange for such transfers and obligations.  Such transfers include, without limitation, payments of cash, and rent-free usage of the Debtor's Real Properties.

80.     The Trustee is informed and believes and based thereon alleges that each of the transfers to or for the benefit of the Defendants Jenero Jefferson, Porsche Jefferson, Gregory Jefferson, MGCH, MGF and Forever Sarah's; and Does 1-10 was made: (a) without the Debtor receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when the Debtor was insolvent or as a result of which the Debtor became insolvent; or (ii), at a time that the Debtor was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; (iii) at a time when the Debtor intended to incur, or believed or should reasonably have believed that the Debtor would incur, debts that would be beyond Debtor's ability to pay as such debts matured; or (iv) to or for the benefit of an insider, or such obligation was incurred to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

81.     The Trustee is informed and believes, and based thereon alleges, that the amounts paid to or for the benefit of Jenero Jefferson, Porsche Jefferson,

Gregory Jefferson, MGCH, MGF and Forever Saraha's; and Does 1-10 in the two-year period preceding the Petition Date includes, but is not limited to, all payments and funds received from the Debtor and transactions outside the ordinary course of business, including the rent-free tenancy in the Debtor's Real Properties, in an amount to be proven at trial.

82.    Accordingly, the transfers to or for the benefit of Defendants Jenero Jefferson, Porsche Jefferson, Gregory Jefferson, MGCH, MGF and Forever Sarah's and Does 1-10 are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

**SIXTH CAUSE OF ACTION**

**AVOIDANCE OF FRAUDULENT TRANSFERS (CONSTRUCTIVE FRAUD)**

**[11 U.S.C. §§ 544(b); Cal. Civ. Code §§ 3439.04(a)(2) and (b) or 3439.05 and 3439.07]**

**(Against Defendants Jenero Jefferson, Porsche Jefferson, Gregory Jefferson,**

**MGCH, MGF, and Forever Sarah's; Does 1-10)**

83.    Plaintiff incorporates each of the general and foregoing allegations as if fully set forth herein.

84.    The Trustee is informed and believes, and based thereon alleges, that the Debtors made the transfers to or for the benefit of Defendants Jenero Jefferson, Porsche Jefferson, Gregory Jefferson, MGCH, MGF and Forever Sarah's ; and to be identified defendants Does 1 through 10 without the Debtors having received reasonably equivalent value in exchange for such transfers and obligations.

85.    The Trustee is informed and believes and based thereon alleges that during the four-year period immediately preceding the Petition Date, the Debtor made transfers of the property to or for the benefit of Defendants Jenero Jefferson, Porsche Jefferson, Gregory Jefferson, MGCH, MGF and Forever Sarah's; and Does 1-10. The Trustee is informed and believes and based thereon alleges that each of the transfers was made: (a) without the Debtors receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when the Debtors were insolvent or as a result of which the Debtors became insolvent; or (ii) at a time that the Debtors were

MSH 65678347v1                    21

engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with the Debtors were an unreasonably small capital; or (iii) at a time when the Debtors intended to incur, or believed or should reasonably have believed that the Debtors would incur, debts that would be beyond Debtors' ability to pay as such debts matured.

86.    The Trustee is informed and believes, and based thereon alleges, that the amounts paid or transferred to or for the benefit of Defendants Jenero Jefferson, Porsche Jefferson, Gregory Jefferson, MGCH, MGF and Forever Sarah's; and Does 1-10 in the four-year period preceding the Petition Date includes, but is not limited to, all payments and funds received from the Debtor and transactions outside the ordinary course of business including the rent-free tenancy in the Debtor's Real Properties, in an amount to be proven at trial received in an amount to be proven at trial.

87.    Accordingly, the transfers and obligations made by the Debtor to or for the benefit of Defendants Jenero Jefferson, Porsche Jefferson, Gregory Jefferson, MGCH, MGF and Forever Sarah's; and Does 1-10 are avoidable pursuant to 11 U.S.C. §§ 544(b) and 550; and Cal. Civ. Code §§ 3439.04(a)(2) and (b) or 3439.05 and 3439.07.

**SEVENTH CAUSE OF ACTION**

**AVOIDANCE OF FRAUDULENT TRANSFERS (INTENTIONAL FRAUD)**

**[11 U.S.C. §§ 544(b); Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07]**

**(Against Defendants Jenero Jefferson, Porsche Jefferson, GREGORY JEFFERSON, MGCH, MGF, and Forever Sarah's)**

88.    Plaintiff incorporates each of the general and foregoing allegations as if fully set forth herein.

89.    The transfers identified above to Defendants Jenero Jefferson, Porsche Jefferson, Gregory Jefferson, MGCH, MGF and Forever Sarah's and Does 1-10,

were made with the actual intent to hinder, delay and/or defraud the Debtor's creditors in that, among other things:

      a.     Each of the transferees was an insider of the Debtor;

      b.     The Debtor retained possession and control of the Real Properties after the time of the transfers;

      c.     The Debtor received no consideration in exchange for the transfers;

      d.     The transfers were made while the Debtor was in various stages of default on the loans associated with the Real Properties;

      e.     The Debtor was insolvent at the time the transfers were made;

      f.     Even after the bankruptcy case was filed, the Debtor's principal, Mr. Jefferson, attempted to conceal the transfers, by among other things, falsely stating in filed declarations and in testimony at the Debtor's 341(a) hearing that the tenants, which he controlled and had a financial interest in, were current on their rent obligations for the Real Properties, when in fact they were not.

90.     Accordingly, the transfers and obligations made by the Debtor  to or for the benefit of Defendants Jenero Jefferson, Porsche Jefferson, Gregory Jefferson, MGCH, MGF and Forever Sarah's; and Does 1-10 are avoidable pursuant to 11 U.S.C. §§ 544(a) and 550; and Cal. Civ. Code §§ 3439.04(a)(1).

## EIGHTH CAUSE OF ACTION

### AVOIDANCE OF UNAUTHORIZED POST-PETITION TRANSFERS

### [11 U.S.C. § 549]

### (Against Defendants Jenero Jefferson, MGCH, MGF, and Forever Sarah's)

91.     Plaintiff incorporates each of the general and foregoing allegations as if fully set forth herein.

92.    On and after the bankruptcy filing, and prior to the conversion of the Debtor's case to Chapter 7, the Debtor made, at least the following unauthorized transfers of value to the above-named defendants:

a.    Cash withdrawals by Jenero Jefferson and direct payments to Mr. Jefferson in an amount to be proven at trial;

b.    $10,000 to MGF;

c.    The continued use of the Real Properties by Defendants, MGCH, Forever Sarah's and MGF without payment of rent.

93.    No order of the bankruptcy court authorizing such transfers was sought or entered.

94.    Accordingly, the unauthorized post-petition transfers and obligations made by the Debtor are avoidable pursuant to 11 U.S.C. §§ 549.

## NINTH CAUSE OF ACTION

### (Recovery Of Transfers Or The Value Thereof Pursuant To 11 U.S.C. § 550)

95.    The Trustee realleges and incorporated herein by reference each and every allegation contained in the preceding paragraphs as though set forth in full.

96.    To the extent that the Defendants are not the initial transferee of the transfers, the Defendants are the immediate or mediate transferee of the initial transferee of such transfer.

97.    The transfers are recoverable from Defendants as the immediate or mediate transferee transfers that the Debtor.

98.    To the extent transfers are avoided, the Trustee may recover the transfers, for the benefit of the Estate, from the Defendants, or, if the Court so orders, the value of the transfers.

MSH 65678347v1                                        24

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants as follows:

1. On the First, Second, Third and Fourth Causes of Action, for general damages against Jenero Jefferson according to proof at trial, but presently estimated to be no less than $500,000

2. On Fifth, Sixth, Seventh and Eighth Causes of Action, for a judgement avoiding the transfers to or for the benefit of Defendants, Jenero Jefferson, Porsche Jefferson, Gregory Jefferson, MGF, MGCH, and Forever Sarah's, for the total mount of the transfers plus interest according to proof at trial.

3. On the Night Cause of Action, for recovery of the avoided transfers, or the value thereof, against Defendants, Jenero Jefferson, Porsche Jefferson, Gregory Jefferson, MGF, MGCH, and Forever Sarah's.

4. As to all Causes of Action, for pre-judgment interest and post-judgment interest, and such other relief as the Court deems proper.

DATED:  June 1, 2026                    Respectfully submitted,

**GREENSPOON MARDER LLP**

By:  _____/s/ Mark S. Horoupian_____
       Mark S. Horoupian
       Attorneys for Howard M. Ehreneberg,
       Chapter 7 Trustee

MSH 65678347v1                                   25

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>HOWARD M. EHRENBERG, CHAPTER 7 TRUSTEE | DEFENDANTS<br>JENERO JEFFERSON, an individual; PORSCHE L. JEFFERSON, an individual; GREGORY JEFFERSON, an individual, MINDFUL GROWTH FOUNDATION, a California not for profit corporation; MINDFUL GROWTH CARE HOMES, LLC, a California limited liability company; FOREVER SARAH'S ELDERLY CARE CORP, a California Corporation; and DOES 1-10 |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Mark S. Horoupian (CA Bar No. 175373)<br>mark.horoupian@gmlaw.com<br>**GREENSPOON MARDER LLP**<br>1875 Century Park East, Suite 1900<br>Los Angeles, California 90067<br>Telephone: 213.626.2311<br>Facsimile: 954.771.9264 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☒ Trustee | ☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☒ Other<br>☐ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
**COMPLAINT FOR;**
**1) BREACH OF FIDUCIARY DUTY;**
**2) CORPORATE WASTE;**
**3) USURPATION OF CORPORATE OPPORTUNITY;**
**5) CONVERSION;**
**6) AVOIDANCE AND RECOVERY OF FRAUDULENT CONVEYANCES;**
**7) AVOIDANCE AND RECOVERY OF UNAUTHORIZED POST-PETITION TRANSFERS**

NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| **FRBP 7001( 1) – Recovery of Money/Property** | **FRBP 7001(6) – Dischargeability (continued)** |
|---|---|
| ☐ 11-Recovery of money/property - §542 turnover of property | ☐ 61 -Dischargeability- §523(a)(5 ), domestic support |
| ☐ 12-Recovery of money/property - §547 preference | ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury |
| ☒ 13-Recovery of money/property - §548 fraudulent transfer | ☐ 63-Dischargeability - §523(a)(8), student loan |
| ☒ 14-Recovery of money/property - other | ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support) |
| **FRBP 7001 (2) – Validity, Priority or Extent of Lien** | ☐ 6 5 -Dischargeability - other |
| ☐ 21-Validity, priority or extent of lien or other interest in property | |
| **FRBP 7001( 3) – Approval of Sale of Property** | **FRBP 7001(7) – Injunctive Relief** |
| ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | ☐ 71 -Injunctive relief- imposition of stay<br>☐ 72-Injunctive relief - other |
| **FRBP 7001(4 ) – Objection/ Revocation of Discharge** | **FRBP 7001(8) Subordination of Claim or Interest** |
| ☐ 41-Objection/re vocation of discharge - §727(c),(d),(e) | ☐ 81 -Subordination of claim or interest |
| **FRBP 7001(5) – Revocation of Confirmation** | **FRBP 7001(9) Declaratory Judgment** |
| ☐ 51-Revocation of confirmation | ☐ 91 -Declaratory judgment |
| **FRBP 7001(6) – Dischargeability** | **FRBP 7001(10) Deter mi nation of Removed Act ion** |
| ☐ 6 6 -Dischargeability - §523(a)(1),(14),(14A) priority tax claims | ☐ 01 -Determination of removed claim or cause |
| ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud | **Other** |
| ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | ☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.* |
| **(continued next column)** | ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) |

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|

CC 65682226v1

**B1040 (FORM 1040) (12/15)**

| ☐ Check if a jury trial is demanded in complaint | ☒ Demand: $500,000 |
|---|---|
| Other Relief Sought<br>For interest and costs of suit. | |

CC 65682226v1

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>CHARITY PRIME REALTY, INC. | BANKRUPTCY CASE NO.<br>2:24-bk-13284-WB | | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central | DIVISION OFFICE<br>Los Angeles | | NAME OF JUDGE<br>Julia W. Brand |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ *Mark S. Horoupian* | | | |
| DATE<br><br>June 1, 2026 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Mark S. Horoupian | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

CC 65682226v1